1789, c. 20, respecting assignments. How the case would have been, if it had clearly appeared from the averments in the bill, that none but heirs and legatees had any interest in the suit, and were all aliens or citizens of another state, and the executor was merely a nominal party, I give no opinion. That is not the case before us. This is to all legal intents a suit between John Dodge and Thomas H. Perkins, and the citizenship of these parties decides the question of jurisdiction. If that be defectively stated, the jurisdiction cannot be sustained. Under these circumstances the present motion cannot be entertained by the court. But the parties may have leave to amend; the plaintiff to amend his bill, as he shall be advised, and the defendant to withdraw his answer, and, if necessary, to file a plea. Motion denied.

---

DODGE (ROBERTS v.). See Case No. 11,-900.

---

## Case No. 3,955.

DODGE v. STUART.

[See Case No. 7,427.]

---

DODGE (UNITED STATES v.). See Cases Nos. 14,975 and 14,976.

---

## Case No. 3,956.

DODGE v. VAN LEAR.

[5 Cranch, C. C. 278.] [1]

Circuit Court, District of Columbia. March, 1837.

STATUTE OF FRAUDS — UNSIGNED MEMORANDUM AIDED BY PAROL EVIDENCE AND LETTERS — SALE—DELIVERY.

1. A written memorandum made by the plaintiff in his day-book, not signed by either of the parties, or by any person for either of them, and proved, by oral testimony only, to have been made in the presence and with the consent of the defendant, and corroborated by the defendant's letters, not referring particularly to that memorandum, nor stating the terms and consideration of the contract, is sufficient to take the case out of the 17th section of the statute of frauds; and it is competent for the jury to connect the letters with the written entry; and the same, taken together, constitute legal and valid evidence of a written contract, in conformity with the requisitions of the statute of frauds.

2. If a contract be absolute to deliver flour on or before a particular day, the vendor will not be excused by an obstruction of the navigation of the canal.

3. It is not material whether the defendant had, or had not the flour on hand at the time of the contract.

Assumpsit, upon a contract to deliver 1000 barrels of flour; half on the 5th, and the residue on the 15th of May, 1835. On the

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

30th of March, 1835, the defendant [Matthew S. Van Lear], being concerned with others in a large flour-mill in or near Williamsport, in Maryland, and having a large quantity of flour on hand, and being in the plaintiff's warehouse in Georgetown, agreed to sell to the plaintiff [Francis Dodge] 1000 barrels of flour, of the defendant's brand, at $4.75 per barrel, to be delivered in Georgetown, half on the 20th, and half on the 30th of April, 1835. The plaintiff, in the presence and with the assent of the defendant, made the following written entry in his day-book, as a memorandum of the agreement, under date of the 30th of March, 1835: "Bought of Mr. Van Lear 1000 barrels his brand flour @ $4.75, to be delivered, half 20th April, and half by 30th; if not here then, I am to be off or not, as I please. ½ D. & Dodge." The words and figures "½ D. & Dodge" were not written until after the defendant had left the warehouse. They were understood to mean that the firm of Davidson & Dodge, consisting of one John Davidson, and the plaintiff's son, Francis Dodge, Junior, were to take upon themselves one half of the amount of the contract. It was afterwards agreed between the plaintiff and the defendant that the time of delivery of the flour should be extended to the 5th and 15th of May, 1835. Upon his return to Williamsport, the defendant wrote to the plaintiff on the 6th of April, 1835, saying that a breach in the canal would probably interrupt the navigation for a month, and render it impracticable to fulfil the contract made with the plaintiff, and requesting an extension of time for thirty days longer. He says, "If boats can be procured from above, a part of the flour, and perhaps the five hundred barrels, can be delivered in due time. But for fear that things may occur to prevent, over which I have no control, I want to know from you, by return mail, whether you will extend the time. I am anxious to live up to the contract, and have the same offer that you made, and an extended time. The canal navigation is so precarious it is out of the question to make any calculation with certainty. My brother will be down as soon as the canal opens." To this the plaintiff replied, on the 7th of April, "Yours of 6th, is received. We must extend the time for the delivery of the contract flour, but hope it will yet be here within the time; say 20th and 30th April. We shall of course claim the first which comes from your mill, and until all can be delivered; and if, in consequence of breaks in the canal, it be kept back until 5th and 15th May, we will not object; and if not here then we are to be still take it or not as we please. On receipt of this, please write and inform when you expect to get it here, &c., and when the four hundred and twenty will be down. We intend to stick to the contract, (although it don't promise any profit,) if it can be placed here before too long a time; and must be liberal when the canal